```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE WESTERN DISTRICT OF TENNESSEE
                        WESTERN DIVISION
```

STEVE RANDY HOLLAND,

    Plaintiff,

vs.   No. 06-2700-STA-tmp

UNITED STATES OF AMERICA,

    Defendant.

MEMORANDUM OPINION AND ORDER

On October 16, 2006, Plaintiff Steve Randy Holland, Bureau of Prisons ("BOP") inmate registration number 19635-001, an inmate at the Federal Correctional Institution in Memphis, Tennessee ("FCI-Memphis"), filed a pro se complaint pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671 et seq. (Docket Entry ("D.E.") 1.)  On April 11, 2007, Defendant filed a motion to dismiss or, in the alternative, for summary judgment. (D.E. 17.) On March 20, 2008, the Court entered an order denying the motion to dismiss without prejudice to its re-submission in a coherent form because Defendant did not file all the exhibits in support of its motion and the omitted exhibits were essential to a determination of the motion. (D.E. 29.) On April 16, 2008, Defendant filed its second motion to dismiss or, in the alternative, for summary judgment. (D.E. 32.) Plaintiff filed a response in opposition to the motion on May 14, 2008.  On February 10, 2009, the Court entered an order denying the motion to dismiss. (D.E. 46.)  A bench trial was conducted on February 17, 2009.

**FINDINGS OF FACT**

At trial, the Government moved for a stipulation as to the material, undisputed facts contained in the Court's February 10, 2009 order. (D.E. 46 at 7-8.) The Court adopted those undisputed facts as stipulated facts. (D.E. 54.) The stipulated facts are incorporated by reference into this memorandum opinion and order.

Having considered the record and the testimony and evidence presented at trial, the Court makes the following additional findings of fact:

1. The judgment in Plaintiff's criminal case was entered on May 8, 1995. (<u>See</u> Trial Exhibit 2.)

2. Plaintiff's restitution obligation was entered pursuant to the Victim and Witness Protection Act ("VWPA"), 18 U.S.C. § 3663, <u>et seq</u>. (D.E. 32-6 at 2.)

3. The VWPA, in effect at the time of Plaintiff's sentencing, provided:

   > The end of such period [of restitution payments], or the last of such installments **shall not be later than** -
   >
   > A. the end of the period of probation, if probation is ordered;
   >
   > B. five years after the end of imprisonment imposed, if the court does not order probation; and
   >
   > C. **five years after the date of sentencing in any other case.**

   <u>See</u> 18 U.S.C. § 3663(f)(2)(emphasis supplied).

4. Marzell Starks ("Starks"), the unit manager at FCI Memphis, supervises four counselors and worked at FCI Memphis for

      twenty-one (21) years. Starks testified that a counselor's duties include the day-to-day management of inmates, program interpretation, and formally meeting once every six months to discuss financial responsibility in a program review.

5. Starks testified that the Inmate Financial Responsibility Program ("IFRP") is for the collection of inmates' debts and financial obligations and requires review of the inmates' judgment and commitment order. He testified that the IFRP is a voluntary program and it seeks methods to develop resources for payment of financial obligations. Starks indicated that BOP Program Statement 5380.07 for the Financial Responsibility Program ("Program Statement")(see Trial Exhibit 1) provides guidance as to how the IFRP works.

6. Starks testified that UNICOR is a prison industry workforce which produces goods for government services and the General Services Administration. UNICOR pays inmates at a higher rate than other prison jobs. Starks testified that to be eligible for priority placement in UNICOR, the inmate should have a financial obligation greater than $1,000, and that having a restitution obligation improved an inmate's chances of getting a UNICOR job.

7. Mary Cobbs ("Cobbs") was a correctional counselor at FCI Memphis where she worked for twenty-two (22) years. Marzell Starks ("Starks") was Cobbs' supervisor in 2003. Starks testified that Cobbs, while working as a counselor, was directed to rely on the Program Statement.

8. Cobbs testified that when Plaintiff was transferred to FCI Memphis, Hoover (now retired) was Plaintiff's counselor. Cobbs testified that there was no indication that Plaintiff owed a restitution debt at that time.

9. Cobbs testified that after Hoover retired she had the entire unit until Maurice Lewis was hired.

10. In January 2003, Cobbs found Plaintiff's judgment and commitment order (see Trial Exhibit 2) which set forth Plaintiff's restitution obligation during a periodic review of the files.

11. Cobbs testified that on January 23, 2003, she contacted the United States District Court for the Northern District of Alabama to confirm the restitution obligation. She made a contemporaneous note of that contact, as was her practice. (See Trial Exhibit 3.) Cobbs acknowledges that her notation refers to the United States Attorney's office, but she contends that she contacted the United States District Court.

12. On January 29, 2003, the Clerk of the United States District Court for the Northern District of Alabama sent Cobbs a fax which indicated that Plaintiff owed $6,920.00 for his restitution obligation. (See Trial Exhibit 4.)

13. Cobbs conducted no further investigation to determine whether the information provided by the Alabama Clerk of Court about Plaintiff's restitution obligation was correct or whether the restitution obligation was enforceable.

14. Cobbs testified that she spoke with Plaintiff about the IFRP, told him that he still owed his restitution obligation, and developed a plan for Plaintiff to pay the obligation.  Cobbs contends that Plaintiff was advised that fifty (50) percent of his pay would be taken to pay the debt.

15. Cobbs contends that Plaintiff voluntarily entered into the program, did not dispute the debt, and offered no protest regarding being encouraged to pay the restitution obligation.

16. Cobbs was not Plaintiff's counselor at the time that she enrolled Plaintiff in the IFRP.  Plaintiff's counselor, Maurice Lewis, was not present during Plaintiff's meetings with Cobbs to develop a plan for the IFRP.  Cobbs testified that Ms. McNeil of Tennessee Unit was present.

17. Cobbs was trained by another counselor and used the financial manual and Program Statement.  Cobbs was not familiar with any statutes related to the imposition of a restitution obligation or the IFRP.  Cobbs was aware, based on the Program Statement, that there may be a "circuit by circuit" limitation on how long restitution remains active.

18. Plaintiff testified that Ms. McNeil was his case manager from May 17, 2000, until about January 2003.  During that time, Plaintiff never discussed the restitution obligation with Ms. McNeil.

19. Plaintiff testified that at the first meeting with Cobbs discussing the IFRP, Cobbs told him she could not find any indication that he had paid restitution.  McNeil told

    Plaintiff and Cobbs that she used to be Plaintiff's case manager and everything showed that he was "FRP satisfactory".

20. Plaintiff testified that McNeil was not able to find the paperwork indicating that he was "FRP satisfactory".

21. Plaintiff testified that he told Cobbs that he had a codefendant, Hicks, and that they had a joint obligation to pay the restitution obligation.

22. The criminal judgment states, "The defendant shall make restitution jointly and severally with co-defendant William Bennett Hicks . . . ."  (<u>See</u> Trial Exhibit 2.)

23. Plaintiff testified that Cobbs said she would contact the Alabama court again.

24. Plaintiff testified that three days later, Cobbs told him that there was no indication that he had a co-defendant and that he owed $6,945.00[1].

25. Plaintiff testified that in his second meeting with Cobbs, he told her about a statute of limitations for enforcing the restitution obligation based on what the jailhouse lawyer told him, but Cobbs told him that there was no statute of limitations for enforcing the obligation.

26. Plaintiff testified that he told Cobbs he would quit UNICOR because he does not owe the restitution.

---

1  The $6,945.00 amount coincides with the Inmate Financial Contract, but Cobbs did not explain why she chose this amount over the $6,920.00 that the Northern District of Alabama indicated that Plaintiff owed. (<u>See</u> D.E. 32-4 at 2-3, 15 & 32-33.)

27. Plaintiff testified that he signed the UNICOR agreement because his jailhouse lawyer told him to sign it and then take the issue before the court.

28. Cobbs denied that she had a second meeting with Plaintiff and does not recall any dispute over the restitution obligation.

29. Maurice Lewis testified that he started being a counselor on December 29, 2002, and was assigned to Plaintiff.  Cobbs was never assigned to Plaintiff as his counselor, but Cobbs was training Lewis.

30. Lewis testified that Cobbs made the call to the district court and wondered why the restitution had not been paid.

31. Lewis confirmed that he was not present during the conversations with Plaintiff and Cobbs about the IFRP.

32. In the section of the Program Statement entitled "Summary of Changes", it states that significant changes in this revision include an outline of "expiration dates for financial obligations". (See Trial Exhibit 1.)

33. At page four of the Program Statement, Section 8(a) "Developing a Financial Plan", it states:

    At initial classification, the unit team shall review an inmate's financial obligations, using all available documentation, including, but not limited to the Presentence Investigation and the Judgment and Commitment Order(s).

    At page five, it states, "A defendant's obligation to pay restitution ceases on a circuit-by-circuit basis for inmates convicted **prior to** April 24, 1996.  18 U.S.C. § 3613 (b)". (Id.)

34. Plaintiff paid $3,583.74 for payment of his restitution obligation through the IFRP[2].

## CONCLUSIONS OF LAW

The Federal Tort Claims Act (FTCA) is the exclusive remedy in tort actions against the United States, providing it shall be liable in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages. 28 U.S.C. §§ 2674, 2679(a). Peak v. Small Business Admin., 660 F.2d 375, 377 (8th Cir. 1981). The FTCA provides a remedy for all claims "for injury or loss of property . . . arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 2679(b).

Under the FTCA, "the district court applies local law to determine liability and to assess damages." Kirchgessner v. United States, 958 F.2d 158, 159 (6th Cir. 1992).

> The liability of the United States in actions under the Federal Tort Claims Act is governed by the law of the place where the alleged tort occurred. 28 U.S.C. §§ 1346(b), 2674. Richards v. United States, 369 U.S. 1 (1962). All of the acts in this case occurred in Tennessee; therefore [Tennessee law] is controlling.

---

2   Defendant produced a "Case Inquiry Report" run on April 10, 2008, from the United States District Court for the Northern District of Alabama with its motion to dismiss which demonstrates that Plaintiff paid $3,583.74 toward his restitution obligation and a $125 fine, for a total of $3,708.74 paid by Plaintiff in his criminal case. (D.E. 32-8.) There is no dispute that Plaintiff paid approximately $3,500 to satisfy his restitution obligation. (See also D.E. 52 at 6-7.)

Ward v. United States, 838 F.2d 182, 184 (6th Cir. 1988). See also Cagle v. United States, 937 F.2d 1073, 1074-75 (6th Cir. 1991).

In Tennessee, no claim for negligence can succeed in the absence of any the following elements:

> (1) a duty of care owed by the defendant to the plaintiff;
> (2) conduct falling below the applicable standard of care amounting to a breach of that duty;
> (3) an injury or loss;
> (4) causation in fact; and
> (5) proximate, or legal cause.

Haynes v. Hamilton County, 883 S.W.2d 606, 611 (Tenn. 1994).

In general, all persons have a duty "to use reasonable care to refrain from conduct that will foreseeably cause injury to others." Biscan v. Brown, 160 S.W.3d 462, 478 (2005) (quoting Turner v. Jordan, 957 S.W.2d 815, 818 (Tenn. 1997)). To determine whether a duty existed in a particular case, the court must evaluate the risk involved. Id. "A risk is unreasonable and gives rise to a duty to act with due care if the foreseeable probability and gravity of harm posed by defendant's conduct outweigh the burden upon defendant to engage in alternative conduct that would have prevented the harm." McCall v. Wilder, 913 S.W.2d 150, 153 (Tenn. 1995). The court must also consider whether the plaintiff's injuries and the manner in which they occurred were reasonably foreseeable. Burroughs v. Magee, 118 S.W.3d 323, 329 (Tenn. 2003). When conducting this analysis, the courts have considered, among other factors: (1) the foreseeable probability of the harm or injury occurring; (2) the possible magnitude of the potential harm or injury; (3) the importance or social value of the activity

engaged in by the defendant; (4) the usefulness of the conduct to the defendant; (5) the feasibility of alternative conduct that is safer; (6) the relative costs and burdens associated with that safer conduct; (7) the relative usefulness of the safer conduct; and (8) the relative safety of alternative conduct. Satterfield v. Breeding Insulation Co., 266 S.W.3d 347, 365 (Tenn. 2008).

While every balancing factor is significant, the foreseeability factor has taken on paramount importance in Tennessee. Hale v. Ostrow, 166 S.W.3d 713, 716-17 (Tenn. 2005); Biscan, 160 S.W.3d at 480. This factor is so important that if an injury could not have been reasonably foreseen, a duty does not arise even if causation-in-fact has been established. Doe v. Linder Constr. Co., 845 S.W.2d 173, 178 (Tenn. 1992). Conversely, foreseeability alone is insufficient to create a duty. McClung v. Delta Square Ltd. P'ship, 937 S.W.2d 891, 904 (Tenn. 1996). If a risk is foreseeable, courts then undertake the balancing analysis. Satterfield, 266 S.W.3d at 366.

The statutorily-mandated duties of the BOP are set out in 18 U.S.C. § 4042(a).

> (a) In General. - The Bureau of Prisons, under the direction of the Attorney General, shall--
>
> (1) have charge of the management and regulation of all Federal penal and correctional institutions;
>
> (2) provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States, or held as witnesses or otherwise;

> (3) provide for the protection, instruction, and discipline of all persons charged with or convicted of offenses against the United States;
>
> (4) provide technical assistance to State and local governments in the improvement of their correctional systems; and
>
> (5) provide notice of release of prisoners in accordance with subsections (b) and (c).

The duty imposed by § 4042(a) is of a general nature. BOP officials are given no guidance, and thus have discretion, in deciding how to accomplish these objectives. <u>Montez ex rel. Estate of Hearlson v. U.S.</u>, 359 F.3d 392, 395 (6th Cir. 2004)[3].

This Court previously noted that it was reasonably foreseeable that a corrections employee charged with the duty to administer the IFRP would be aware of and knowledgeable about relevant laws related to the expiration of a restitution obligation. (D.E. 46 at 11.) The Court further noted Judge Acker's comments that

> Holland's and Hick's restitution obligations, as a matter of law, expired long ago by the express terms of the VWPA, rendering this entire discussion academic, except for the practical pickle in which Holland still finds himself with the BOP.

(<u>Id.</u>) <u>See</u> <u>United States v. Holland</u>, 380 F.Supp.2d 1264, 1270 (N.D. Ala. 2005).

Twenty-eight Code of Federal Regulations § 545.10 provides:

> The Bureau of Prisons encourages each sentenced inmate to meet his or her legitimate financial obligations. As part of the initial classification process, staff will assist

---

3   Prison administrators possess considerable discretion in the regulation of internal institutional affairs. <u>Wolfel v. Bates</u>, 707 F.2d 932, 933-34, citing <u>Jones v. North Carolina Prisoners' Labor Union, Inc.</u>, 433 U.S. 119 (1977). However, Defendant has offered no evidence or argument to show that it is entitled to the protection of the discretionary function exception. <u>See</u> <u>George v. United States</u>, No. 2:06 CV 90, 2008 WL 2945543 (N.D. W.Va. July 25, 2008).

11

>    the inmate in developing a financial plan for meeting
>    those obligations, and at subsequent program reviews,
>    staff shall consider the inmate's efforts to fulfill
>    those obligations as indicative of that individual's
>    acceptance and demonstrated level of responsibility. The
>    provisions of this rule apply to all inmates in federal
>    facilities, except: Study and observation cases, pretrial
>    detainees, and inmates in hold-over status pending
>    designation.

See also Program Statement 5380.07 (D.E. 32-4 at 4.) This Program Statement also outlines the expiration dates for financial obligations and states, "At initial classification, the unit team shall review an inmate's financial obligations, using all available documentation, including, but not limited to, the Presentence Investigation and the Judgment and Commitment Order(s)" to develop a financial plan. (D.E. 32-4 at 17, 20-21.)

   In the instant case, Plaintiff's initial classification at FCI-Memphis did not reveal that he owed a restitution obligation. It took two years before any BOP employee determined that Plaintiff had a restitution obligation. Cobbs, the BOP employee who made that determination, was not Plaintiff's counselor, nor did she question the fact that Plaintiff's counselor had no knowledge of the Plaintiff's restitution obligation or made no attempt to enroll Plaintiff in the IFRP previously. Further, despite Cobbs' inability to recall these conversations, the Court finds Plaintiff's testimony that he informed Cobbs about his codefendant's joint obligation to pay restitution and that the statute of limitations had passed to enforce the obligation

credible. Additionally, Cobbs was better able to obtain the information to determine whether Plaintiff had a legitimate debt[4].

In United States v. Wilson, 503 U.S. 329, 335 (1992), the Court indicated that the BOP has a statutory duty to administer the sentence and to fulfill that duty the BOP has to know how much of the sentence the offender has left to serve. In United States v. Gifford, 90 F.3d 160, 163 (6th Cir. 1996), the Sixth Circuit states that the restitution obligation is a "discrete part" of the sentence and that the VWPA contemplates restitution as a separate element of sentencing. See also United States v. Satterfield, 743 F.2d 827, 837 (11th Cir. 1984)("There can be little doubt that Congress intended the restitution penalties of the VWPA to be incorporated into the traditional sentencing structure."). The Court finds that just as the BOP has a duty to know how much of a sentence the offender has left to serve, Defendant had a duty to determine whether this restitution obligation was a legitimate financial obligation prior to enrolling Plaintiff in the IFRP. See Alexander v. Perrill, 916 F.2d 1392, 1398-99 (9th Cir. 1990)(prison officials who are under a duty to investigate claims of computational errors in the calculation of prison sentences may be liable for their failure to do so when a reasonable request is made).

---

4 However, as Plaintiff demonstrated by filing a petition in the Northern District of Alabama, Plaintiff made reasonable attempts to resolve the issue of whether his restitution obligation was still due.

Defendant clearly breached that duty by failing to investigate the circumstances surrounding Plaintiff's restitution obligation to determine whether the restitution obligation was a legitimate financial obligation. Defendant's breach is, in part, because of its lack of knowledge related to the enforcement of the restitution obligation. Had Cobbs further investigated the matter, she may have discovered that the Sixth Circuit has held that the VWPA expressly limits the life of criminal restitution orders and that a defendant's restitution obligation cannot be extended beyond the statutory period. See United States v. Joseph, 914 F.2d 780, 786 (6th Cir. 1990). Based on the Program Statement's warning about "circuit-by-circuit" interpretations related to restitution obligations prior to 1996, Cobbs should have recognized the possibility that there would be circumstances when she could not merely rely on a judgment or commitment order to determine whether a legitimate debt existed. Further, Defendant has no coherent explanation as to why the BOP would have let a legitimate restitution obligation go uncollected for a period of five or more years. The contours of Defendant's duties were sufficiently clear that a reasonable prison official would have understood that a failure to act under the circumstances would be wrongful. See Anderson v. Creighton, 483 U.S. 635, 640 (1987).

Defendant's negligence was the legal and factual cause for Plaintiff's restitution payments.

The record evidence indicates that Plaintiff paid $3,583.74 through the IFRP towards his restitution.

14

For the reasons set forth in this opinion, the Court finds that the Government was negligent.  Accordingly judgment is ENTERED in favor of Plaintiff in the amount of $3,583.74.

IT IS SO ORDERED this 30th day of September, 2009.

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE